PER CURIAM.
The state appeals a downward departure sentence, and we conclude that while the trial court did not err in departing from the sentencing guidelines based on Barbera v. State, 505 So.2d 413 (Fla.1987), receded from on other grounds, Pope v. State, 561 So.2d 554 (Fla.1990), it did err in placing appellee in community control. Accordingly, we affirm in part, reverse in part, and remand.
Appellee originally was charged by information with armed robbery (the- prior offense) and pled guilty, whereupon the trial court sentenced him as a youthful offender to two years community control. Appellee subsequently violated the conditions of his community control, and the trial court re-sentenced him to a four year term of imprisonment as a youthful offender. After appellee successfully completed “boot camp,” the trial court modified his sentence and placed him on probation for four years.
Appellee was then charged (along with three codefendants) with strong arm robbery and false imprisonment (the instant offenses). Based upon these charges, ap-pellee’s probation officer filed an affidavit of violation of probation for the prior offense. The trial court conducted a plea hearing, and appellee pled guilty to both violation of probation and the instant offenses. When the trial court inquired into the circumstances surrounding the strong arm robbery, the following exchange occurred:
THE COURT: Who was there?
[APPELLEE]: It was me, Travis Stone, Sammy and Cliff.
THE COURT: Clifton Rouse?
[APPELLEE]: Yes, sir.
[PROSECUTOR]: Sammy Meadows?
[APPELLEE]: Yes, ma’am. And we were all there. We was under the influence of drink — liquor. And Juan’s sister came—
THE COURT: Wait a minute. What were you drinking?
[APPELLEE]: I don’t remember, Your Honor.
THE COURT: You don’t remember what you were drinking?
[APPELLEE]: I think it was Budweiser. I think it was.
THE COURT: What?
[APPELLEE]: I think it was Budweiser.
THE COURT: How much had you had to drink?
[APPELLEE]: Your Honor, I really don’t know. I really don’t know. And—
THE COURT: One can?
[APPELLEE]: About three or four.
*590 THE COURT: What else did you have? Did you have any cocaine?
[APPELLEE]: No, Your Honor.
THE COURT: Marijuana, heroin?
[APPELLEE]: We had marijuana, Your Honor.
THE COURT: You’re doing that at the same time, mixing them?
[APPELLEE]: Yes, Your Honor.
(Emphasis added).
The Department of Corrections prepared appellee’s PSI. Under the section entitled “Alcohol Substance Abuse,” the report stated as follows:
The subject advised that alcohol and marijuana are the cause of his present situation and his prior robbery arrest. He stated that although he does not drink alcohol or smoke marijuana on [a] regular basis, the night of the incident in question he smoked a joint and drank some beer which cause[d] him to become involved with his former “Zulu gang friends.” The subject stated he has never used cocaine.
Appellee was also interviewed by a counsel- or at the Spectrum Program (a substance abuse facility), and the counselor’s report stated that appellee was “appropriate” for long term residential treatment. Appellee informed the counselor that he had been drinking alcohol and using drugs since the age of fifteen, and stated that prior to being incarcerated, he was smoking five joints and drinking three quarts of beer per day. According to the counselor, appellee “acknowledged that he is addicted/dependent on alcohol/drugs and is open to [residential] treatment.” The counselor found that appellee needed support in an intensive structured environment.
At the sentencing hearing, defense counsel filed the Spectrum report for the trial court’s consideration and urged the trial court to impose the same sentence it had imposed for one of his codefendants — fifteen years imprisonment (suspended) with five years community control. The prosecutor recommended that appellee be sentenced to the maximum permitted term of imprisonment, seventeen years. Appellee’s probation officer believed “that the punishment should be very harsh” and recommended twelve years imprisonment. Ap-pellee informed the court that he did in fact have a “bad drug problem” and requested that he be placed in a drug program.
The trial court indicated that appellee would be eligible for a downward departure sentence under Barbera because he stated under oath that he had a drug problem, revoked appellee’s probation for the first armed robbery conviction and reimposed a four year prison sentence in a youthful offender facility. Regarding the instant offenses, the trial court sentenced appellee to a twelve year term of imprisonment for the strong arm robbery conviction but suspended it for two years in community control to be followed by three years probation subject to the following conditions: drug evaluation and treatment, periodic urinalysis, restitution to the victim, electronic monitoring while on community control, and successful completion of the Spectrum program. On the false imprisonment count, the trial court sentenced appel-lee to a straight two years community control followed by three years probation subject to the same conditions. The two sentences for the instant offenses were to run concurrently with each other but consecutive to the four year youthful offender sentence. The state objected and filed the instant appeal.
The state asserts that the trial court erred in entering a downward departure sentence because appellee could not pass the two prong test enunciated in Herrin v. State, 568 So.2d 920 (Fla.1990). Herrin holds that for purposes of guidelines departures, the defendant’s substance abuse must be considered together with his or her amenability to rehabilitation. Id. at 922. Unlike Herrin, however, the instant case is a “true” Barbera case. Appellee testified under oath that he had a drug problem and that he was under the influence of both marijuana and alcohol when he committed the instant offenses. Herrin does not prevent a trial court from downwardly departing from the guidelines, even in the absence of record evidence that the defendant is amenable to rehabilitation, where alcohol *591 (or by analogy narcotics) substantially impaired the defendant’s mind when the crime was committed. Id. Based on appel-lee’s testimony before the trial court as well as his statements to both his probation officer and the Spectrum counselor, the trial court’s imposition of a downward departure sentence pursuant to Barbera was justified.[1] We further conclude that the state’s additional contention that the trial court did not provide written reasons for downward departure is meritless. See State v. Martin, 551 So.2d 600 (Fla. 4th DCA 1989); Jordan v. State, 562 So.2d 820 (Fla. 4th DCA), rev. denied, 569 So.2d 1279 (Fla.1990); Torres-Arboledo v. State, 524 So.2d 403 (Fla.), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988).
The state correctly argues, however, that appellee’s sentence was improper pursuant to section 948.01(10), Florida Statutes (1991), which provides:
An offender shall not be placed in community control if:
(a) Convicted of or adjudication withheld for a forcible felony as defined in s. 776.08, and
(b) Previously convicted of or adjudication withheld for a forcible felony as defined in s. 776.08.
“ ‘Forcible felony' means treason; murder; manslaughter; sexual battery; robbery, ... and any other felony which involves the use or threat of physical force or violence against any individual.” § 776.08, Fla. Stat. (1991). When appellee committed the instant offenses of strong arm robbery and false imprisonment, he was on probation for armed robbery. Therefore, as the state asserts, the trial court was precluded from placing appellee in community control.
GLICKSTEIN, C.J., and HERSEY, J., concur.
ANSTEAD, J., concurs in part and dissents in part with opinion.

. Given the Spectrum counselor’s report that appellee had a substance abuse problem and was a good candidate for long term residential treatment, the trial court’s downward departure probably could be justified under Herrin as well.